Mr. O'Brien is first up. Is that correct, sir? That is correct, Your Honor. Well, good morning to you. Good morning, Your Honors. My name is Timothy O'Brien. I represent the appellant in this case. This matter involves an incident that occurred on July 28, 2008. Before you jump in, do you want to reserve some time? I did want to reserve three minutes. For rebuttal? Three minutes for rebuttal, Your Honor. All right. Very well. Go ahead. The matter involves an event that occurred on July 28, 2008. I'm sure the Court's aware of the facts. On that day, Lindsey Cahill was 16 years old, was subject to a false arrest, filing of false criminal charges, and the use of excessive force by a Hanover part-time police officer. It is our contention that the evidence in the case showed that that conduct was directly related to the Hanover Township Police Department's relationship with Live Nation and that there were facts to support that and that the lower court resolved factual disputes and improperly. How could you possibly succeed in establishing state action when there were no private employees from Live Nation directly involved in the confrontation with Cahill? I think we can establish it. First off, there is no requirement in terms of state action that somebody be physically present from the private employer. We can establish state action if there is a plan pursuant to which the state actor was performing his or her duties. Well, let me ask you this. Why shouldn't we follow Cruz, then, since the officers here seem to exercise their own independent judgment? Well, two things about Cruz. Cruz has decided on a motion to dismiss, and this court was very careful to indicate that there was no evidence whatsoever in the pleadings that there was any kind of a plan pursuant to which the officer was acting. In our case, we have significant evidence of a plan. Well, what evidence do you have to support the finding that the police officers substituted Live Nation's position for their own pursuant to this sort of a preexisting plan? We have several pieces of evidence that support that. First off, it was very clear from the director of operations' testimony that the Hanover Township police officers were expected to enforce the in-house rules. Now, help me on this. I presume you're now going to argue that there was an in-house rule with regard to the fire lane, and I'm trying to think of what cop in the nation, the United States, wouldn't enforce a fire lane rule. Well, the problem with... And help me on part two of it, which is if Live Nation had a particular rule, their rule didn't direct a specific action that would eviscerate the exercise of discretion by the officers. Well, there's two things about the fire lane rule. First off, a fire lane on a piece of private property, somebody traversing that is not committing a violation of the laws of the Commonwealth of Pennsylvania. So to the extent that a police officer enforces that, the police officer is doing it for somebody else's private purpose. The facts... Now, in this particular instance, I suppose you can make that argument, but if there's a fire lane outside, a police officer can exercise his or her discretion by saying, you know, move along, or if they see the person is in some distress, they can go help them. I mean, any number of ways in which they can address that particular situation. And the same is true here, isn't it? A police officer could exercise their discretion to deal with an unsafe circumstance, but that doesn't mean that they can use their authority to arrest somebody or charge somebody with a criminal offense. There's a big difference between police officers ensuring public safety and then using their state-authorized powers to accomplish that. If somebody was creating an imminent danger and they didn't move, then a police officer might be able to arrest them for disorderly conduct and use force accordingly. The facts in this case... Now, before you go any further, but why shouldn't we reject your claim on the fire lane rule? Because it rests on nothing more than testimony of another proceeding dealing with other people at another time. It has nothing to do with this case. Well, actually it's based on testimony in this case and in another case involving Live Nation where the same people testified in the earlier case. But it was a different location, a different time, a different place. Well, it was, but it involved the same policy. The policy that Live Nation had, and I think it's important to keep in mind, that Live Nation contracts with Hanover Township to help it achieve security at the premises, to help it with pedestrian and traffic flow. They're joint actors in carrying out an essential function that Live Nation has to perform at the concert venue. If the court were to look at the agreement that the parties entered into at page 334 of the record, it says specifically... You want me to speak to the microphone? It says specifically that... What paragraph of the agreement? This is right after agreement where it says, witness it. It doesn't have a paragraph number. But it says, whereas PP, and it was Pavilion Partners at the time, now Live Nation, is engaged in the business of providing facilities for concerts and events and desires to use the services of part-time officers to be provided by the township at such concerts and events. So we have Live Nation, we have testimony in the record that one of their obligations was to provide security at these concert venues. They then contract with Hanover to help them provide it. When they contract with Hanover, they pay Hanover and then the police officers are on Hanover's payroll? That is true. Everything goes through Hanover to the police officers. So how is this different than Yankee Stadium, right? Cops are at Yankee Stadium for every event. Correct. Cops are employees of the city. The city makes whatever arrangement they will with the Yankees. So does that mean that in enforcing their duties at Yankee Stadium, the Yankees are now subject to being defendants in 1983 actions? No, not necessarily. And I think it's important, and this court has noted that, that the facts are specific or the facts are what are important. And you can have cases that look the same with different results. You have the Brentwood case where the Supreme Court found state action. You have the Tarkanian case where the Supreme Court found no state action. They both involve athletic associations governing participants' athletic activities. The difference between the Yankee Stadium example and this example is that Live Nation actually controls what these individuals do. Well, it's more than that. As I understand from this record, the police officers only work for Live Nation. Is that correct? That's it. Even though they were police officers with the town, they never really worked for the town. They did not work for the town. These individuals' sole function as police officers was to work at the Post-Gazette Pavilion for Live Nation. But they were bona fide police officers of the municipality. Well, they were technically that, but they were hired. What happened here really is that Hanover Township is a recruiting agency for the Post-Gazette Pavilion. They bring in police officers. The person in charge of pedestrian and traffic control at the Post-Gazette Pavilion was this Mr. Gentile. He was the director of operations. He testified that he had the authority to direct them where to go, what kinds of activities that they should be concerned about, and how to do traffic control. On the facts in this case, on the night or the day this happened, Zoeller testified that this wasn't a fire lane. This was just a normal lane, and that there had been an instruction from Live Nation to designate that as a no-pedestrian lane. So he was following their instruction that night. His judgment was not the judgment that determined that that lane- Did everyone that was in that lane that night get arrested? I don't know, Your Honor. I know that in this particular instance- You know what my point is. These officers exercised their independent judgment. If you're telling me that there was a rule, and the rule was nobody in this lane according to Live Nation, then I would expect the factual predicate for that statement to be everyone who went in that lane was arrested. Now, if they weren't, then that must mean that the officers exercised some independent judgment. I think there's a question of fact that is raised by the facts in this case as to why Zoeller acted in the way that he did. We know they had a policy that said no pedestrians in certain lanes, sometimes a fire lane, sometimes an ad hoc designated lane. We know that on the night in question that he was told to keep that lane clear. We know that in the past, other part-time police officers enforcing that rule had used force, had arrested people, and that Gentile said that was fine. So we know we start with we have a rule. The rule can be enforced by using force. And then we have the night in question where here's the lane. We don't want anybody in it. And then we have a police officer who we would assume would only arrest somebody and charge somebody with a criminal offense if they had probable cause to believe that an offense had occurred. But on our facts, there is no probable cause. If Live Nation marks off lanes of ingress and egress and a fire lane from that diagram that you have exhibited, and the police officers are municipal cops, work for the municipality, what makes the officer a state actor for Live Nation if he sees someone coming in the ingress lane, coming in the exit lane? I mean, he said, look, this is for exit. Go back or you'll get arrested or whatever. What would make the police officer an actor for Live Nation if he says, look, we don't want you coming in the exit lane and we don't want you walking in the fire lane? Why does that make him a Live Nation state actor? It makes Live Nation a state actor if you look at the totality of the circumstances, which this court said is how it's supposed to be examined. So you look to see, okay, what's the relationship between Live Nation and Hanover? We've hired them to provide security and do traffic control. We have in-house rules and we authorize you to use your police powers to enforce those even in the absence of any reason to believe that a crime has occurred. And that's the distinction. If, for example, this person... I want you to answer my specific question. If this police officer sees someone coming in the exit lane... He says to the guy, look, go back. And the fellow says, I'm not going to go back. I like this lane. He says, look, you go back or I'm going to arrest you. He doesn't go back. He comes in the exit lane. He arrests him or he gives him a citation. And does that make... Was that police officer exercising power such that Live Nation was a state actor when Live Nation said this is for exit, this is for entry? It may depend on whether or not the conduct of this individual who is arrested has committed an offense under the Crimes Code of the Commonwealth of Pennsylvania. A police officer cannot use their police powers when there has been no crime or reason to believe that a crime has been committed. So if that individual is coming in and is causing potential harm to others, it might rise to the level of disorderly conduct. That's what I assume. Someone coming in a lane marked for exit, a police officer sees someone getting hit on a collision here, tells the guy, look, go back. The guy says, no, I'm coming in here. So he cites him. That's very similar to someone walking in the fire zone when they're not supposed to be in the fire zone. And a police officer says, look, get out of the fire zone. The guy says, I'll take my time to get out of here. I've got to talk to some cars going by. Does that make, I mean, the zones, the lanes are marked for the safety. They're not municipal ordinances, but they're marked for safety. Does it make Live Nation a public actor when the police officer says, don't come in the exit lane? The question that the court is raising, I think, appropriately, is whether or not the police officer has substituted his or her judgment by the judgment of the private party. If, in fact, there is a crime committed in the presence of the police officer, the police officer can exercise his or her discretion and use their police powers. The distinction here in this case is that the police were expected to use those police powers when there was no crime committed. So your same example of a safety situation, not a crime, but a police officer also to prevent accidents. Well, that's true, and the police officer in that instance could conclude and have a reasonable basis to believe that there's disorderly conduct because that's one of the elements of disorderly conduct. But if that's not there, and our facts are there are no predicate facts for a criminal conduct on the part of my client. The other cases that we've mentioned in our case were very similar to that. Again, no indication that there was anybody that was at risk for harm by my client or any of the other people who crossed these lanes. So there was no predicate basis for the police officer to act. So we can draw the inference that the police officer was not exercising his or her police judgment but acting pursuant to the judgment of Live Nation that we don't want people in those lanes, period. And I may point out to the court, if I could, under this state action analysis, one of the tests, and this is the Cruz test, did the police officer substitute the private party's judgment for his judgment? If so, and he was acting in concert with a private party, there's state action. There's also another basis for state action in this case, and that's where someone is a willful participant, where a private party is a willful participant with a state actor. And that's the Wickersham case, and that stems from the Brentwood case. Isn't Wickersham a red herring because that involves rules that were unconstitutional on their face? No, I don't think so. I don't think that... You don't think it involved a... Oh, it does. The rule involved explicitly the violation of a citizen's First Amendment rights. But Wickersham does not... Isn't that a basis to distinguish it from this? Well, it's not, and I don't think Wickersham rests on that. Wickersham, and I'll quote from it, when a private party has acted jointly and... What page are you quoting from? I'm sorry, let me just get that really quickly. That's at 599, 481, 599, and... The cases are not apropos, the facts of this case. The facts of this case, you have a live nation marking off lanes of ingress and egress and fire, and police officers, in effect, enforcing those as part of their... in order to keep safety and prevent accidents. That's true, and that's a part of the state action analysis, but there's much more here. This isn't as if these police, such as Yankee Stadium, where the police come in, they're going to maintain peace by using their law enforcement authorities. That's not the situation here. We have a contract where these police officers only work here. Live Nation and Hanover jointly designate the person who's in charge. Live Nation pays $250,000 a year to Hanover Township, provides them with all of their equipment. There is a basis for state action under the Brentwood test of entwinement, which does not require substitution of judgment. They're so intertwined that it's fair to attribute state status to them. That's the analysis. Look, when they... What happened here was, physically, she was reaching for her pocketbook, wasn't she, when they told her to get out of the car? What happened? Well, the facts are, our version of the facts, actually supported by their citations and incident reports. She's crossing the lane. She's midway across, and Zoeller says, words to the effect, get out of the lane. She has a choice of going back to where she came from or directly into the car that was stopped, and she went into the car. She's now in the car. She has not committed any criminal offense, nor is there any reason to believe that she did, on our facts. At that point, Zoeller comes down. He starts knocking on the window, demanding that the door be opened, and then drags her out, puts her in a chokehold, and takes her across the street, and then ultimately charges her with disorderly conduct. Those charges, by the way, are withdrawn, which, again... That's got nothing to do with whether or not he's exercising... Independent judgment. Okay, I'm just suggesting that it's... That's of no relevance whatsoever. But in any event, she's in the car. He comes and he pulls her out. Well, suppose he pulls her out because she's down. Wasn't she reaching for her pocketbook on the floor? I mean, what's your position? He contends that somehow there was a struggle. She contends there was no struggle at all, that the driver unlocked the door, he opens the door, and just yanks her out. She did nothing to deserve that. There was no reason for force to be used. And I think it's important, in terms of how did this come about. Is there any possibility that somebody would be subject to this kind of conduct, absent what we know about Live Nation's rules and how it regulates the police that work for it? This came about because they have a rule. I don't want anybody in these lanes. I don't want anybody in these lanes not with standing... Yeah, but your argument's untenable, isn't it? Because you're arguing that there's no way that an officer could have exercised independent judgment to make sure that cars didn't stay out of that lane. Okay, first off, there wasn't an issue about a car being in the lane. There were no cars in that lane. Zola testified to that. So the lane is clear. The only thing that happened is... Well, they're in the lane. No, no, the car is parked here. The lane that my client crossed that nobody was supposed to be in is the lane that he claimed she violated the rule. I'm sorry, that she violated the rule. So the facts are a little bit different than what the court understands them to be, at least as we view the facts. She was standing on the side. The car is parked here. A Live Nation employee told the driver it was okay to stop there. And then my client traversed this lane that was supposed to be kept clear. There were no cars in that lane. There was no threat of harm to anyone by her crossing it. So again... I don't have anything else of this. I'm sorry. Oh, I thought you asked. I don't have any other questions. Okay. We'll get you on rebuttal. Thank you. Thank you, Your Honor. Ms. Ho? Hello, Your Honors. Good morning. Good morning. How are you doing? Very well, thank you. I believe the panel has it exactly right. Well, if you could straighten me out on one thing right up front, which I think is your Achilles heel, if I'm not mistaken. The police officers here were police officers of the town. But they didn't work for anyone but Live Nation. Your Honor, if I may... Let me finish. I'm sorry. And they never really functioned as municipal police officers, except when they worked for Live Nation. So you have, in effect, Live Nation as a private police force here, although they are members of the municipal police department. That is incorrect, Your Honor, respectfully. Oh, wrong. Live Nation, I'm sorry, the Hanover Township Police Department did exist separate and apart from the Post-Gazette Pavilion. In fact, there were two officers, including Officer Hashtag, one of the defendants in this case, who was actually patrolling the township at the time in question and then was assigned by the dispatcher to assist in traffic control at the end of the time. I'm talking about these two police officers who are on duty this day. The record, I think, is pretty clear. They didn't work for anyone except Live Nation. No, Your Honor. Officer Hashtag was assigned to the township detail. He was working for the township. He was patrolling the township during the day, and then at this particular time he was assigned to work at the Post-Gazette. I thought he only got paid by Live Nation. I was unaware that he received any remuneration for police work from the municipality. That's why I think the record is pretty clear on that. My wrong? Yes, Your Honor. He was assigned to work the township. He was not working the Post-Gazette Pavilion. Did the township ever pay him any money during this period of time that he was working part-time or working for Live Nation? I don't. The record, there is nothing in the record on that particular issue. But I think the question is, regardless of whether the police only worked for the Post-Gazette Pavilion or not, or Live Nation or not, the question is, as the panel had indicated, whether the police officers substituted Live Nation's judgment for their own in deciding how to handle situations. The only evidence in the record, assuming plaintiff's claim, is that Live Nation said that there was no pedestrians permitted in these particular lanes of traffic. There is no evidence in the record. No, that's incorrect. You're misstating the record. The record is quite clear. Mr. Gentile himself said that police officers do what he tells them to do. That was absolutely, the record reflects that on several occasions. He mentioned that, you know, the police officers in Forest Square do what we tell them to do and we, you know, mark off these lanes or whatever, you know, egress, egress, fire zone. And that was his testimony. Respectfully, I disagree. What the testimony was was that he could tell the police to go to a particular location to look for, like, underage drinking or things like along those lines. He could ask the police to do that. But there is no evidence in the record that Live Nation told the police what to do once they got there. Well, you could read his, you could, I mean, look, it's depending upon the facts are in the eyes of the beholder. I read that testimony and you could read it. I'm saying it could be susceptible to different reading, that Gentile felt that he had the ability to tell the police officers what to do. You could read it that he was just telling them to do their job, but that's not the way I think a reasonable person could read it, that he felt he had the authority to tell these police officers to enforce whatever Live Nation wanted them to do, which would include Live Nation's marking off fire lanes and traffic lanes. Yes. Even accepting that premise, Your Honor, there is still no evidence that Live Nation told the police what they were supposed to do in enforcing that rule. It's up to, as you indicated. But that's the plaintiff's position. The plaintiff's position is they were enforcing the lanes that Live Nation marked off and that they were not just enforcing municipal ordinances or New Jersey Disorderly Persons Act. I think you have to go a step further. You have to show that in addition to enforcing a rule, the police were doing whatever Live Nation told them to do and how they enforced that rule. There is no evidence in the record that any Live Nation person told the police that they were to use force to remove someone from the fire lane, that they were to cite someone who was in the fire lane or who did not leave the fire lane after they were directed to do so, and that the Hanover Township Police did that regardless of whether they believed that was appropriate police work or not. There is no evidence in the record on that. What you're saying is that Live Nation established the lane and how the police enforced what Live Nation wanted was up to the policeman? That's correct, Your Honor. Well, it's significant that both Zoller and Hotchak were part-time officers, that's for sure. Yes. At the very least. My position is, reading this record, you could say that they only worked for Live Nation, who performed their duties exclusively in connection with the pavilion. I mean, I think the appendix is pretty clear on that one. I presume that your position is supported by the deposition questions you asked Mr. Gentile. Yes, Your Honor. And when you asked him, did you give Chief Geho, how do you pronounce that word? Geho. Geho? Yes. Geho any special instructions as to how Hanover Township Police officers were to conduct themselves while at the Post-Gazette Pavilion? The answer, no. My question is, obviously you went through a series of questions that established the point you're making here. What was the counter that your adversary extracted from Mr. Gentile? Was there any equivocation on examination by your adversary as to whether the Hanover Township Police were subject to specific instructions from the pavilion? I apologize, Your Honor. No, there was no equivocation on that. There was no equivocation on Mr. Gentile's statement that he could not tell the Hanover Township Police how to perform their jobs. And that was also agreed to by Lance Jones, who was the operations manager, who was also deposed in the Schaffer case, where he testified on page 709 of the record that we hired them, being the Hanover Township Police, for traffic detail and to enforce the laws, and you know they did that on their own. Well, I'll quote directly from a record. I'll quote. It was right in the record, which would indicate that there are genuine issues of material fact with respect to libations, power over the police officers, given that Mr. Gentile's statement in his deposition that he could, and I'm quoting right from the record, give Chief Gayhoe to do or not do a certain thing. Direct Chief to do or not to do a certain thing. Now, you could read it both ways, but a reasonable jury could take that libation's officers. He's pretty high up. He's right up there at the top, Gentile. And it's his position that he could tell the officers what to do. Your Honor, I submit that when you read that testimony in context, what he's actually talking about is deciding where police officers will be placed. No, no, I'm reading it in context that he could tell them what to do, not that he could tell them to go and use their police powers. You could read it that way, but a juror could read it otherwise. I think that when he's asked a specific question, as Judge Greenaway noted, when I specifically asked him, can you tell the police how to perform their jobs, he said unequivocally, no. There is nothing in the record to contradict that flat-out denial of any ability to actually tell the police how to perform their jobs. We have Chief Jeho himself testifying both in Shafrin and submitting an affidavit in this case saying the police cannot tell Hanover Township police officers how to do their job. So Gentile testified that he could tell the police officers to enforce their in-house rules, the lanes. Yes, but even accepting that, Your Honor, there is no evidence that Live Nation controlled the manner in which the police enforced those rules. What you're saying is they could control the overall object, but not the method. That's correct, Your Honor. So he could say, make sure the fire lanes stay open, and then the policeman would have to do that. Now the policeman could do that maybe in various ways, but it would be up to the policeman to make the choice of which way to do it. That's correct. Well, as to the happening of the fire lane, I mean, obviously they were enforcing the local rules as to the fire lane, but as to this summary judgment finding by the district court, the district court, I read his opinion. He took it right off the citation, the facts as to what occurred. He took it right off the citation. But the citation, the police officer's view of what happened, is that loggerheads, not even a lie, it's 180 degrees different from what Cahill testified happened. So it appears to me that if I've ever seen a case, the district court made fact-finding here. He didn't believe Cahill. I respectfully disagree, Your Honor. You disagree that he took the facts off the citation. He says word for word. No, I don't disagree with that. I disagree with the fact that the… You don't disagree with the fact that he took his fact-finding off of the citation that the police officer entered? Your Honor, I'd have to… It's a yes or no, I think. I don't necessarily disagree with that, but that is not… If you don't disagree with that, do you disagree with the fact that Cahill's testimony was at loggerheads with what that citation stated? Yes, I do not agree. So why did the district court then engage in fact-finding when police officers had one story, Ms. Cahill had another story? Because this is not a motion for summary judgment that was filed on behalf of the police officers. It was a motion for… I'm sorry, I apologize. I didn't understand that. Because of what? Because this was not in the context of a motion for summary judgment filed on behalf of the police officer. It was a motion for summary judgment filed on behalf of Live Nation. The question here is not whether Officer Zoller's version of events was accurate or whether Lindsay Cahill's version of events were accurate. The question was whether there was any evidence that the police officers substituted Live Nation's judgment for their own in deciding how to handle the situation. And there is no evidence that Live Nation played any role in Officer Zoller's decision to use force in removing Lindsay Cahill from the car or the decision to cite her for disorderly conduct. There is no evidence whatsoever to contradict the district court's finding that there was no Live Nation employee involved in this incident. Not even Mr. Gentile's extensive testimony that you could read that the police officers were there to do what he told them to do. But Your Honor, again… And the fact that the police officers, the way I read this record, didn't work for anyone except Live Nation. But again, Your Honor, in order for there to be a finding of state action on the part of Live Nation, there has to be the additional factor that the police officers were doing whatever Live Nation told them to do and how to do what they were doing and how to handle situations that took place at the Post-Codeption Pavilion. And there is no evidence to contradict the flat-out assertions by Mr. Gentile, Mr. Jones, Chief Jeho, Ed O'Barnaby, that Live Nation did not have any ability to tell the police how to perform their jobs. It was up to the police to make that decision. Let me ask you this question that was a proposition that your adversary put forth. He said there are no predicate facts that Ms. Cahill was engaged in any criminal activity. Would you agree with that or disagree with that? I would disagree with that because, again, that's only the case if you accept wholeheartedly Ms. Cahill's version of events. Officer Zoeller has a different version of events that would support a finding of this sort of conduct. Is that criminal activity disorderly conduct? I think it's a summary offense under the Pennsylvania Crimes Code, I believe, Your Honor. What criminal activity was she engaging in? She was engaging in disobeying an officer's directive to move and also engaging in vulgar language in public. That's not what the citation cited for. Bad language. I'm sorry, Your Honor. Bad language. Yes, that's correct, Your Honor. Whether the fact that that's not what is in the citation or not, Live Nation did not prepare the citation. There is no indication, there's no evidence that Live Nation played any role in what the police officers decided to cite Ms. Cahill for or even that they played any role in the decision to cite her whatsoever. That was the individual police officer's decision, and there's no evidence that that was influenced in any way by anything Live Nation did or said or told the officers. What set of facts would we have to have for a Live Nation to fall within the ambit of 1983? Because it sounds as if you're saying that the only way you can do this is if essentially a Live Nation employee were there whispering into the ear of the officer. No, I think that if you had any evidence that the police were doing, like say Live Nation, there was evidence saying, okay, Live Nation felt that someone was backstage inappropriately and told the police to arrest that person, and the police arrested them without any thought as to whether that was an appropriate course of action or not. Some indication that the police were doing what Live Nation told them to do without any independent thought on the part of the police officer as to whether that was appropriate. What about the notion that there's no city, locals, or state ordinance against or with regard to this lane being open? The paper seemed to suggest that this is a rule that's sui generis to Live Nation and that the enforcement of that rule is not an enforcement or couldn't be deemed an enforcement of a local ordinance or law, that it was clearly the officers acting with regard to a Live Nation rule. And I guess that's where, I guess that comes back to, there has to be some connection between the rule and a constitutional violation here. Say that Live Nation had a rule saying no people were permitted backstage and a police officer told a patron who went backstage to leave the area. How is that a constitutional violation? The question here is that there must be a connection between the rule and a constitutional violation, such as in Wickersham, where the rule was clearly violative of the First Amendment rights and the police were enforcing that. There you have the connection between enforcement of a rule and a constitutional violation. Here, enforcement of no pedestrians in the fire lane rule does not impact upon a constitutional right, and a citizen does not have the right to go anywhere they want on private property, and a private property owner does not violate someone's constitutional rights by limiting where that person can go on his or her property. Yeah, if we were to ask you to point out in this record, because I didn't see it, where at the time that these police officers were working for Live Nation, they were at that same time working, being paid by the municipality. Would you be able to do that in this record? Well, I don't disagree with Mr. O'Brien's statement that the money went from Live Nation to the township, and the township paid the officers. Correct. In other words, but in effect, the police officers were really just working for Live Nation. Even though Live Nation gave it to the municipality, you then gave that same money to the police officers. Yes, but that does not all... No, but is that the fact? That is the fact. All right. Would that fact be significant in analyzing whether or not these police officers, when they were working for Live Nation, were in effect a private police force for Live Nation? Well, then I think that makes it different, Your Honor. If the argument now is, well, there are always private police officers as opposed to handover township police officers, then I think you lose the connection with the state action. All right, I understand your position. Thank you. I don't have any other questions. Okay, thank you. Thank you, Your Honor. Mr. Hart. Connors, I'm Brennan Hart. I appreciate your giving us the courtesy of allowing both of us to argue. I've represented this venue and its various owners for more than 25 years. This is a very important case to us because of many other cases that Mr. O'Brien has brought against Live Nation. And claiming that we are state actors. Well, Ben, can you answer the question that Judge Cowan has been asking? And that is, are these officers essentially captive officers for this venue? Are they only working at this venue for the whatever number of dates are reflected in the agreement? These are full-time police officers from a variety of municipalities in western Pennsylvania. They are hired by Hanover Township to supplement their regular police force for the nights that we have concerts. Well, in the record, what do you have in the record so far as their employment? In the record, the only indication I could glean was that they were police officers of the municipality, but they only work for Live Nation. Is there anything in the record to reflect otherwise? I'm not sure I understand your question, Your Honor. They are full-time police officers in other municipalities. On the nights of the concerts... No, my observation in response to your question is that on this record, which we can't go beyond this record, it appears that these police officers were municipal police officers but only worked for Live Nation at that particular time. On those evenings when there were concerts, that's correct. All right. They were brought in to work. At that time, they were only working for Live Nation. Yes, Your Honor, you have 15,000 people trying to exit a venue. They need police officers. I don't want to get into what was necessary and not necessary. The fact is that at the time this occurred, they were only working for Live Nation. Is that correct or not? Live Nation had a contract with... We're talking about how you... You want to tell me whether my statement... Excuse me, sir. You want to tell me whether the statement I just put out is correct or incorrect? If I'm incorrect, I'd like to hear it. They were only working for Live Nation, but they were not employees of Live Nation. I understand your position. Thank you. Thank you for answering my question. I don't understand something. Okay. I love the Yankees, so here's my analogy. I think the Yankee analogy is perfect. I'm a New York cop, right? The Yankees have 81 dates... Yes, sir. ...until they get into the playoffs, which happens every year. Yes, sir. But let's just deal with the regular season. On those 81... How long they last is a separate question. Absolutely. From year to year, it's a question. We can bring up 2009 again, but why go there? So my question is this. They are employed pursuant to the agreement, assuming it's the same agreement, for those 81 dates. But on the other 130 workdays or whatever, they're working for New York City. Yes. In our case, however many concert dates there are at the Pavilion... There are about 20. Okay, plus 20. These officers are working for the Pavilion those 20 days. Yes, sir. But on the other 230 workdays or whatever the number is, they're working in whatever municipality they're an officer for. Is that correct? Most of them. There are a handful that are full-time Hanover Township employees year-round who also... Are you saying... You know, it's funny. I didn't understand that. I thought I studied this case. These officers that were there are not simply in their own lives officers working these handful of days at Live Nation. These are full-time police officers working for that township or some other township. So we're talking about trained individuals. Absolutely. They're trained police officers that have the full training to carry firearms and they are full-time police officers in either Hanover Township or the surrounding communities. Not on this record. Yeah, I didn't... I thought that... Gee, I think that's an important point. But I didn't understand that point until right now. Well, let me make this very clear. We are bound by the record in this case. You understand that, of course. You are too. Yes, sir. Are you saying that the record in this case reflects that these officers who were on duty that evening were also working for other municipalities at that time? On this record? I can't answer that question, Your Honor. Well, you can't answer it because there's nothing in the record that reflects that they were working for anyone at this time except Live Nation. That's a clear... I didn't look... That's clear from this record. I didn't look for that issue. I know you didn't, but I think the plaintiff appellate will look for it since it's a significant aspect that these officers only worked for Live Nation. They didn't work for any other municipality, any municipality, except they were authorized police officers. These are not officers who have a full-time job with the municipal police department and then moonlight to make a few extra bucks with Live Nation. That's not what you have here. I don't think Mr. O'Brien would dispute the fact that they're full-time police officers in other communities. That is... I want to tell you something. He can talk for himself, but I read his brief, and I see it exactly the opposite from what you just said. I would have thought that that... You know, years ago, I was a young lawyer, and I remember I brought a class action and had one member of the class and my client told me, yeah, you're a typical lawyer. You don't understand, he told me, that when a judge seizes a lot of plaintiffs, it looks different to a judge than when there's only one plaintiff and you can give me all the legal stuff you want. That's what he told me. You know what? There were more plaintiffs. And, you know, sometimes things put a... There became more plaintiffs after he straightened me out. And the question... Sometimes things look a little different with the facts. Well... So you're telling... What you're telling us is that you had experienced police officers who were making judgments here. Yes, sir. Well, we get on another topic. Do you disagree that the citation that the police officer gave is exactly the factual finding that the district judge made in granting summary judgment? The district court, Your Honor, yes. Cited... I asked you whether you agree with it or not. I don't want to go into... Well, the district court also cited the Pennsylvania statute on disorderly conduct. I know, but as a matter of the factual findings he made, did he not take it right off the citation that the police officer issued? Yes or no? Yes. And there was testimony by... Thank you. You answered my question. And there was testimony by... Let me ask you the next question. If he took as a factual predicate for the summary judgment the citation that the police officer issued, do you agree or disagree that Ms. Cahill's position as to how the... how the confrontation arose is diametrically opposite to what was set forth in the citation? Do you agree or disagree with that, sir? Per account of what occurs there, yes. Mr. Smith, I asked you a question. Yes, sir. And it's a very simple question, and I asked you whether you agree with it or you don't. Yes, sir. You do agree with that? Yes. All right, thank you. But that has nothing to do with our motion for summary judgment. Well, you're entitled to your opinion, sir. As far as I learned, I learned that 55 years ago it might be out of date, but for summary judgment to be issued, there's got to be no contested issue of fact. The police officer said the confrontation arose as I set forth in my citation. Ms. Cahill tells a story which is 180 degrees different. Your Honor, no... no difference of material fact. The dispute in this testimony is immaterial to Live Nation's motion for summary judgment. We don't care what the police say... That was not your position at summary judgment. You didn't take a materiality proposition. No, that was not your position. Your position was not one of materiality, although I don't see that with slow heater, but that was not your argument of the defendant on summary judgment. Not materiality. Your position at that time was that this was the facts, period. And we did believe it would be the facts, but it does not matter that there's a disputed fact between Ms. Cahill and the police officers. The issue for us is did the police officers substitute our judgment for theirs? But that would be true in a 1983 federal case, but are there state claims here? On the state claims, Your Honor, they settled with the police officers, so there's no vicarious liability claim. The negligent... So the state claim, then, could only be based on some liability, like hiring negligently... Yeah, it was hiring and supervision. There's never been a claim made against Officer Zoller, any prior citizen claim, and there were only two claims made against Officer Hatchack, both having to deal with traffic stops unrelated to the Post-Gazette Pavilion. You're saying... Suppose, for example, you were running a company and you had an employee who was working for you, and the employee injured somebody in the course of his employment on your behalf, and you were sued. In that case, you might be vicariously liable. But you're saying this case cannot involve vicarious liability at common law. Yes, sir, it cannot. Well, the plaintiff doesn't disagree with that. He acknowledges that Live Nation is not liable vicariously. He has claims directly, not vicariously. He's leveled claims directly against Live Nation. The vicarious claims, even he admits, have disappeared by reason of vicarious liability. He's made direct claims against you. Not only vicarious... Forget about vicarious. He has direct claims in addition to the 1983 claims. Those did not disappear when the vicarious claims were settled, did they? The only direct claims he has... Well, let me answer this question. He settled the vicarious claims are gone. Yes, sir. But you acknowledge, do you not, that the settlement of the vicarious claims does not settle claims directly made against Live Nation. State claims made directly. Which were negligent hiring and... Whatever they are. It didn't settle them, did it? As long as we understand what those claims are. Yes, I agree with that statement. All right, that's all I want to know. On the question of 1983 claims, the 1983 claim could be based on vicarious liability, couldn't it? Could a municipality... Forget private companies. And a municipal policeman enforcing a state law beat up a defendant without justification. Could there be vicarious liability? In 1983, actually, yes. Then to the extent that this case is based on vicarious 1983 liability, is that settled out too? Is it what, Your Honor? Is that eliminated by the settlement, vicarious 1983? I don't believe that it is, Your Honor. But again, it's clear that Judge McVeary's decision, opinion talked about how there was no proximate cause. There was no proximate cause in Live Nation's conduct and the independent conduct of Ms. Cahill and the police officer. Live Nation had no... There's not any iota of evidence on the record that Live Nation had any direction to the police officers as to how to do their jobs. Well, then you disagree with Mr. Gentile's testimony, I take it? No, Your Honor. He did say that they are to enforce our traffic rules. Not only traffic rules. He said that they'll do what we tell them to, in effect. A jury could read it that way. I'm not saying they should, but a jury could read the testimony, Gentile's and the other testimony, that the officers were told to do what we tell them to do. No, Your Honor, that's not how it went. His testimony was, the officers will enforce our private rules. And he gave examples. He said, no fires in the parking lot. He said, no underage... Well, do you acknowledge that Gentile acknowledged that they will enforce our private rules? Yes, sir. All right, thank you. I don't have any other questions. Thank you so much. Thank you, Your Honor. We'll hear from Mr. O'Brien for rebuttal. If I may, Your Honors, specifically at page 655 of the record, um... Officer Zoller specifically acknowledges that he was working... The question to him was, and the distinction between a township officer and the position that you previously held was that in the part-time Post Gazette Pavilion position, all of your duties were at the Post Gazette Pavilion during the concert season. Is that correct? Answer, correct. Let's see if we can put this to bed. Within the time allotted. Yes. There were officers that worked at the Post Gazette Pavilion who were otherwise full-time officers at East Hanover. Is that right? That is not correct, Your Honor. So only... That is not correct. Well, if that's not correct, then what was the purpose of your question when you said, let me ask you, this is at page 529 of the appendix, line 15, you say, question, let me ask you, let's start from 2005 through to the present date, and I want you to put aside for a moment any officers who were hired solely for the purpose of working at the Post Gazette Pavilion. Okay? Answer, yes. Question, and there are officers hired solely for that purpose. Is that correct? Answer, yes. So clearly there are some who are, but there are some who work there who are not. Is that correct? No, that is not correct. Okay, so the only people that work at the Post Gazette are people who are hired solely to be part-time officers of East Hanover for the Post Gazette. With the exception of Chief Gehoe. Chief Gehoe is a full-time officer at Hanover Township. He is the jointly selected manager of these part-time police officers. Besides him, and there may have been one other intermediate supervisory personnel. So these officers worked, whatever, 20, 30 dates, pursuant to the agreement, and they're East Hanover trained and certified police, but they only worked for the pavilion. All of their days in the year amounts to these days at the pavilion. The police officers who worked part-time at the Post Gazette Pavilion had no other relationship with Hanover Township other than that Hanover hired them to work at the Post Gazette Pavilion. Beyond that, there's no connection between those officers and Hanover Township. There's another group, a very small group, maybe three people total, who worked as... Chief Gehoe was full-time, and then there were two other, maybe three other part-time officers whose duties were out in Hanover Township, not at the Post Gazette Pavilion. In response to Mr. Hart's assertion that these officers who worked at the Post Gazette Pavilion were all working at another municipality, that's not true. In fact, Officer Zoeller was not a police officer employed by any municipality. What did they do for a living? They certainly couldn't live on what they were making a handful of days. Any of these officers, Your Honor, perhaps here but in western Pennsylvania particularly, are not hired full-time by any police department. So what they do is they work ten hours for Adams Township and they work five hours for somebody else, and then they work at the Post Gazette Pavilion. Now, they are all certified to be municipal police officers within the Commonwealth of Pennsylvania, but you can be certified as a police officer in the Commonwealth of Pennsylvania and keep that certification for two years even if you're not employed by a police department. Well, might some of them be employed in capacities unrelated to police work? Yes, in fact, Mr. Zoeller was employed by Allegheny County as a security guard. He didn't carry a weapon. He was employed by Allegheny County at a local hospital, I believe is what his position was. So he did not work for any municipality as a police officer. His sole function was as working for the Post Gazette Pavilion. And these officers, when they worked at the Post Gazette Pavilion, did not do anything else in Hanover Township. They were, as Judge Cowan has said, they were captive to the Post Gazette Pavilion. So for our purposes, where is that specific fact in the record just so that we know? The fact of? That this is the only thing they do. I would point to the testimony of Officer Zoeller, which I just stated, which was at 655 of the record. That's fine. And there's another site where you are, and I don't have it in front of me at the moment, but there's a couple of sites where that's present. Could you also just touch on Mr. Gentile's testimony or the other testimony saying that these officers did what we told them to do, in effect? Right. It's very clear, and if you look at page 616 of the record, Gentile is testified to, and this is by Lance Jones, who is the general manager who was Gentile's supervisor, said that Gentile has the authority to determine how traffic control is done. And that's what we have here. Traffic and pedestrian control, he had the authority to say how it was done. And a point that was raised by Ms. Ho was that, well, we can't tell them how to do their job. And that is not an adequate defense here at all, because if that were, then you'd never have a private party engage in state action based upon what a police officer does or what a constable does, because every time that would happen, the private party could say, well, I didn't tell them to arrest. I didn't tell them to use force. Well, that's the whole conundrum of this area, right? It's when does the private party really control Right, well, that's part of it. But again, these tests, Your Honor, and as the Brentwood case says, it's a normative analysis, and you look at whether, and here's the standard. Is it fair to attribute state action to a private party under the circumstances? And I would submit that by any standard, attributing state action to Live Nation in this case is compelling. They hire a police force. They jointly determine who's going to supervise them. They tell them what to do. They pay their wages. Not only that, they give them $250,000 for the heck of it. How much more of an... I just want to think, you read the citation that your client received. Does your client have a position as to what occurred, which is at odds with the citation that the officer gave? Yes, absolutely. Not only that, Zoller admits that his citation is not correct. Well, I don't want to get into... And the district judge, in effect, almost quoted the citation as the findings of facts as to how this occurred. Right, and his doing that resolved a material fact. That is, he concluded that there was criminal activity that would have warranted police action. On our facts, there is no criminal activity to warrant police action, and if you take our facts, then his conduct is consistent with the instructions that he had from Live Nation to enforce their rule. I would point out, if I may, that in terms of... That's okay, you don't need to. I don't have anything further. Nothing further? Yeah, I think we're good. Thank you. This case was extremely well-argued, and we appreciate all of your efforts.